IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN N. BOLTON,

        Petitioner,                  No. CIV S-06-0449 GEB CHS P

   vs.

DARREL G. ADAMS, et al.,

        Respondents.            FINDINGS AND RECOMMENDATIONS

_____/

I.    INTRODUCTION

       Petitioner Steven Bolton is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner attacks his August 27, 2002 conviction for violation of California Penal Code § 288(a) in the Butte County Superior Court, Case No. CM017082.

II.    ISSUES

       Petitioner makes the following claims:

   A.    The trial court violated petitioner's constitutional rights by granting the prosecution's motion to file an amend information after petitioner waived his right to a preliminary hearing; and

   B.    The trial court violated petitioner's constitutional rights by instructing the jury that the credibility of a child witness is different than an adult's.

/////

1

Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's petition for habeas corpus relief be denied.

/////

### III. FACTUAL AND PROCEDURAL BACKGROUND

#### A. Commitment Offense

> In the summer of 2001, [petitioner] and his wife rented a house in Palermo. In December 2001, Maria A. and her children, including her 8-year-old daughter Penny, moved in with [petitioner] and his wife. When the landlord disapproved of the living arrangement, he asked [petitioner] and his wife to move. On February 6, 2002, [petitioner] and his wife moved from the residence.
>
> One evening after Christmas 2001, [petitioner] entered a bathroom that Penny was using and placed his finger inside her "private spot." The touching scratched her vagina and continued until she stated, "Don't." When they left the bathroom he threatened her, "You tell anybody, I'm going to kill you." He was not assisting her in wiping herself when he touched her.
>
> At some point, Penny showed Maria the scratch in her vagina. Maria placed ointment on the scratch and it healed in about three days.
>
> On March 2, 2002, Penny returned from a shopping trip with her family and a friend. When Penny observed [petitioner], she "crawled" up under the dashboard of the truck in which they were riding. After [petitioner] left the area, Penny stated, "he's the one that g[a]ve me the scratch."
>
> Later in March 2002, Penny was examined by a family nurse practitioner. Penny related that she was touched inappropriately in her "pee pee."

/////

October 25, 2004 opinion of the California Court of Appeal, lodged with this court at Answer, Lodged Document 2 at 2. On August 27, 2002, a jury found petitioner guilty of one count of violating California Penal Code § 288(a), lewd act upon a child. Clerk's Transcript ("CT") at 69. On January 21, 2003 the trial judge sentenced petitioner to six years incarceration. Id. at 118.

/////

#### B. State Habeas Corpus Proceedings

On December 17, 2003 petitioner appealed his conviction to the California Court

of Appeal, Third District.  Answer, Lodged Doc. 1.  That court affirmed the judgment on October 25, 2004.  Answer, Lodged Doc. 2.  On November 23, 2004 petitioner petitioned the California Supreme Court.  Answer, Lodged Doc. 3.  The California Supreme Court denied that petition on January 12, 2005.  Id.  Petitioner filed the instant federal petition on March 6, 2006.

IV.    APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).[1]

## V. PETITIONER'S CLAIMS

### A. Constitutional Violation in Granting Motion to File Amended Information

#### 1) Description of Claim

Petitioner claims the trial court violated his constitutional rights when the court granted the prosecution's motion to file an amended information after he had waived his right to a preliminary hearing. Petition at 4. Petitioner claims this amendment violated "the most basic component of federal due process: notice." Id. at 27.

#### 2) State Court Opinion

In analyzing petitioner's claim, the California Court of Appeal summarized the events as follows:

> On April 9, 2002, the Butte County District Attorney filed a felony complaint charging [petitioner] with one count of commission of a lewd act with a child, "[o]n or about December 20, 2001."
>
> On May 13, 2002, [petitioner] waived his right to a preliminary examination.
>
> On May 24, 2002, the district attorney filed an information alleging that the offense took place "[o]n or about December 20, 2001 and February 6, 2002." On May 28, 2002, [petitioner] waived formal arraignment on the information and pleaded not guilty. [Petitioner], represented by appointed attorney F.L. Willis, raised no objection to the information.
>
> On August 8, 2002, retained attorney Dennis Hoptowit was substituted for attorney Willis.
>
> On August 21, 2002, attorney Hoptowit for the first time objected orally that the dates of accusation listed in the information (December 20, 2001, through February 6, 2002) were broader than the dates listed in the complaint (on or about December 20, 2001).
>
> Attorney Hoptowit stated: "It's difficult to articulate my concern

---

[1] Here, the last reasoned state court opinion is the October 25, 2004 unpublished opinion of the California Court of Appeal, Third District, Case No C043209, lodged with this court as Lodged Document 2.

4

> because I don't-I mean I have done child molest cases where it was on or between and then a date became it was Tuesday after I went to the dentist and then we were able to track down that it was impossible to have occurred on that date, my client was in a completely different county. [¶] And my other concern is that with a waiver of a prelim based upon the complaint and simply file an information that alleges a broader time frame, that's not appropriate." Defense counsel added: "Your Honor, I'm not arguing that it's on December 20th or no other date. The complaint ... says on or about December 20th and the law clearly provides for a time frame that I suspect would encompass all of the dates. But the fact that the People change the dates when a prelim has been waived and then argue that that's okay I think is inappropriate ."
>
> Following argument, the trial court ruled: "The Court is going to allow the information to stand. And we'll just listen to the evidence and if it turns out that in someway [*sic*] the defendant is prejudiced by that, the Court will take that into consideration at the time. [¶] At this time it appears to the Court that the information was presented, a copy given to the defendant, no demurrer was filed, no [section] 995 was filed. Nothing was done and it does not appear to the Court that it prejudices the defendant in any way because of the existence of the allegations in the police report. And the on or about language is broad enough I would think in a child molestation type of a case involving a seven-year-old to encompass certain leeway, certain number of weeks one way or the other."
>
> The issue of prejudice was not raised during the ensuing trial.

/////

Answer, Lodged Doc. 2 at 3-5. The Court of Appeal went on to reject petitioner's claim, finding that:

> Contrary to [petitioner's] contention, the prosecution did not make, and the trial court did not grant, any *motion* to *amend* the information. Rather, after a complaint was filed alleging that "[o]n or about December 20, 2001," "[petitioner] digitally penetrated victim's vagina," the prosecution filed an *original information* alleging that "[o]n or about December 20, 2001 *and February 6, 2002,*" "[petitioner] digitally penetrated victim's vagina." (Italics added.) [Petitioner] did not demur to the information.
>
> Although both pleadings alleged just one incident, [petitioner] claims the change of date "effectively changed the crime charged." However, the inartfully worded information did not *purport* to charge a crime *other than* the one charged in the complaint. At most, the information was *indefinite* as to whether the charged crimes were the same.
>
> "The well-established rule is that failure to demur on the ground

5

> that a charging allegation is not sufficiently definite waives any objection to the sufficiency of the information. [Citations.]" (People v. Holt (1997) 15 Cal.4th 619, 672; see People v. Polowicz (1992) 5 Cal.App.4th 1082, 1094.) Thus, [petitioner] has waived any claim that the information was too indefinite to afford him constitutionally adequate notice. "The waiver rule promotes efficiency and conserves judicial resources by allowing correction of pleading defects prior to trial and prevents a defendant ' "from speculating on the result of the trial and raising the objection after an unfavorable verdict." ' [Citation.]" (Polowicz, supra, at p. 1094.)
>
> [Petitioner] claims his contention is not waived because the trial court lacked jurisdiction to try him on the charge alleged in the information. This argument fails because it presupposes that the crime charged in the information was *not* the one alleged in the complaint. (See People v. Winters (1990) 221 Cal.App.3d 997, 1005-1007 [where preliminary hearing is waived, information cannot be amended to show a crime *not* alleged in the complaint].) That, however, is the very issue that could have been resolved by timely demurrer to the information.
>
> In any event, [petitioner] makes no claim of error with respect to the trial court's ruling that the complaint's "on or about" language is "broad enough ... in a child molestation type of a case involving a seven-year-old to encompass certain leeway, certain number of weeks one way or the other." Although the court did not identify the "certain number" it had in mind, it implied that the complaint could be read broadly enough to encompass the dates alleged in the information. Reading the complaint in that manner negates any claim that the information charged a crime that had not been charged in the complaint. Any contention that the trial court read the complaint too broadly is waived by the failure to assert it. (See People v. Hardy (1992) 2 Cal.4th 86, 150; People v. Wharton (1991) 53 Cal.3d 522, 563.)

/////

Answer, Lodged Doc. 2 at 5-7 (emphasis in original).

        3)    <u>Applicable Law</u>

In cases involving sexual abuse of young children, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity and the victims' testimony at trial may differ from their pretrial statements. See e.g., Valentine v. Konteh, 395 F.3d 626, 632, 638 (6th Cir. 2005) and cases cited therein ("courts must be aware and responsive to the unique problems of child abuse cases"). Nonetheless, the Sixth Amendment guarantees a criminal defendant the fundamental right to be clearly informed of the nature and cause of the

charges against him in order to permit adequate preparation of a defense. Cole v. State of Ark., 333 U.S. 196, 201 (1948). Indeed, "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." Id. See also Strickland v. Washington, 466 U.S. 668, 685 (1984) ("a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding"); Jackson v. Virginia, 443 U.S. 307, 314 (1979) ("[A] conviction upon a charge not made . . . constitutes a denial of due process"). The notice provision of the Sixth Amendment is incorporated within the Due Process Clause of the Fourteenth Amendment and is applicable to the states. Gautt v. Lewis, 489 F.3d 993, 1003 (9th Cir. 2007).

When determining whether a criminal defendant has received fair notice of the charges against him, a reviewing court must begin its analysis by reviewing the content of the charging document. Id.[2] A charging document is constitutionally adequate if it: (1) contains the elements of the charged offense; (2) gives the defendant adequate notice of the charges; and (3) protects the defendant against double jeopardy. Russell v. United States, 369 U.S. 749, 763-64 (1962); Valentine, 395 F.3d at 631. "It is generally sufficient that the indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to

---

[2] "The 'sufficiency of an indictment or information is primarily a question of state law.'" Tapia v. Tansy, 926 F.2d 1554, 1560 (10th Cir. 1991) (quoting Franklin v. White, 803 F.2d 416, 418 (8th Cir. 1986). However, the notice provided by a state in a charging instrument must comport with the due process guarantee of a fair trial. See Jackson, 443 U.S. at 314 (it is "axiomatic" that "a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend"); Wilkerson v. Wyrick, 806 F.2d 161, 164 (8th Cir. 1986) (applying this principle to habeas review of charging instrument).

7

constitute the offense intended to be punished.'" Hamling v. United States, 418 U.S. 87, 117 (1974) (quoting United States v. Carll, 105 U.S. 611, 612 (1882)).  However, where guilt depends crucially upon a specific identification of fact, a charging document must do more than simply repeat the language of the criminal statute; it must also apprise the defendant of the relevant facts.  See United States v. Cruikshank, 92 U.S. 542, 558 (1985) (where the definition of an offense "includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species – it must descend to particulars"); Russell, 369 U.S. at 749 (indictment did not give proper notice where it recited the language of the charging statute and charged that the defendants had refused to answer questions that 'were pertinent to the question then under inquiry' by a committee of Congress, but failed to state the subject which was under inquiry); United States v. Hess, 124 U.S. 483, 487 (1888) ("Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged); United States v. Pernillo-Fuentes, 252 F.3d 1030, 1032 (9th Cir. 2001) (quoting United States v. Lane, 765 F.2d 1376, 1380 (9th Cir.1985)) (an indictment must "'allege the elements of the offense charged and the facts which inform the defendant of the specific offense with which he is charged'").  As the United States Supreme Court has explained,

> The object of the indictment is to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances.

Cruikshank, 92 U.S. at 558.

4) <u>Discussion</u>

California Penal Code § 288(a) states that:

8

> Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

/////

CAL. PENAL CODE § 288(a).

The felony complaint filed against petitioner on April 9, 2002 stated that:

> On or about December 20, 2001, in the above named Judicial District, the crime of LEWD ACT UPON A CHILD, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by STEVEN NEAL BOLTON, who did willfully, unlawfully, and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Penelope T., a child under the age of fourteen years, with the intent of arousing, appealing to, and gratifying the lust, passions, and sexual desires of the said defendant and the said child, to wit: defendant digitally penetrated victim's vagina.

/////

CT at 1.

On May 24, 2002, the prosecution filed an information stating:

> On or about December 20, 2001 and February 6, 2002, in the above named Judicial District, the crime of LEWD ACT UPON A CHILD, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by STEVEN NEAL BOLTON, who did willfully, unlawfully, and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Penelope T., a child under the age of fourteen years., with the intent of arousing, appealing to, and gratifying the lust, passions, and sexual desires of the said defendant and the said child, to wit: defendant digitally penetrated victim's vagina.

/////

CT at 8. The only difference between the April 9, 2002 complaint and the May 24, 2002 information, is the inclusion of "and February 6, 2002" in the May 24, 2002 document.

The April 9, 2002 complaint contained the elements of the charged offense, gave petitioner adequate notice of the charge against him and was sufficiently specific so as to protect him against double jeopardy. From the moment petitioner received the complaint, he was on

9

notice that it was alleged that he violated § 288(a) by digitally penetrating Penelope T sometime "on or about December 20, 2001." The May 24, 2002 information in no way altered the fundamental charge against petitioner but simply attempted to circumscribe the time period. That in no way violated petitioner's constitutional right to notice.

The state court opinion denying petitioner's claim was not contrary to clearly established federal law, nor an unreasonable determination of the facts. Petitioner is therefore not entitled to relief on this claim.

B.   Violation of Constitutional Rights Resulting From Jury Instruction Error

1)   Description of Claim

Petitioner claims that the court improperly "bolstered the . . . credibility" of the testimony of Penelope T. Petition at 5. Petitioner argues that the use of California Jury Instruction 2.20.1 "invaded the jury's province as fact-finder and unfairly bolstered Penny's credibility by telling the jury not to consider the child witness' level of cognitive development" as an indication that her testimony was not credible despite the fact that such factors are relevant in evaluating the credibility of an adult witness. Id. at 32.

/////

2)   State Court Opinion

The California Court of Appeal rejected this claim, finding that:

> Section 1127f requires the trial court, upon request of a party, to instruct the jury in the language of CALJIC No. 2.20.1 when a child 10 years or younger testifies as a witness.
>
> In this case, the jury was instructed: "In evaluating the testimony of a child ten years of age or younger, you should consider all of the factors surrounding the child's testimony, including the age of the child and any evidence regarding the child's level of cognitive development. A child, because of age and level of cognitive development, may perform differently than an adult as a witness, but that does not mean that a child is any more or less believable than an adult. You should not discount or distrust the testimony of a child solely because he or she is a child. [¶] Cognitive means the child's ability to perceive, to understand, to remember and to communicate any matter about which the child has knowledge."

10

> As [petitioner] recognizes, attacks on the constitutionality of CALJIC No. 2.20.1 repeatedly have been rejected. (People v. Jones (1992) 10 Cal.App.4th 1566, 1572-1574; People v. Gilbert (1992) 5 Cal.App.4th 1372, 1393; People v. Harlan (1990) 222 Cal.App.3d 439, 455-457; see People v. Dennis (1998) 17 Cal.4th 468, 527 [noting the foregoing cases].)
>
> Jones and Harlan reasoned that "[t]he use of the word 'perform' in the second sentence implies nonverbal action. This sentence merely advises the jury that due to the age and level of cognitive development, a child may act differently on the witness stand than an adult. It does not relate to the truth or falsity of the content of the child's testimony." (People v. Harlan, supra, 222 Cal.App.3d at p. 455; People v. Jones, supra, 10 Cal.App.4th at pp. 1572-1573.)
>
> [Petitioner] claims it is not reasonably likely the jury understood the second sentence of CALJIC No. 2.20.1 to be limited to "nonverbal action." (People v. Harlan, supra, 222 Cal.App.3d at p. 455; see, e.g., People v. Clair (1992) 2 Cal.4th 629, 663 [reasonable likelihood standard]; People v. Kelly (1992) 1 Cal.4th 495, 525-526 [same].) We agree.
>
> The instruction's second sentence states that a child "may perform differently than an adult" *because of age and level of cognitive development.* (CALJIC No. 2.20.1, italics added.) The fourth sentence defines " 'cognitive' " as "the child's *ability* to perceive, to understand, to remember, and *to communicate* any matter about which the child has knowledge." (CALJIC No. 2.20.1, italics added.) Read together, these sentences advise that a child may perform differently than an adult *because of* the child's " *level of* " " *ability* " to " *communicate* ."
>
> The word "communicate" encompasses the child's ability to put observed or perceived matter *into words,* i.e., verbal ability. To the extent that Jones, Gilbert and Harlan suggest otherwise, we respectfully decline to follow them.
>
> Nevertheless, CALJIC No. 2.20.1 does not tell the jury to "disregard indications of impaired perception, understanding, memory or communication," as [petitioner] claims. Rather, the instruction tells the jury to "consider all of the factors surrounding the child's testimony, including the age of the child and any evidence regarding the child's level of cognitive development."
>
> CALJIC No. 2.20.1 cautions the jury not to deduce that a child *is* "more or less believable than an adult" merely because a child " *may* perform differently than an adult as a witness." (Italics added.) Reasonable jurors would understand this instruction to mean that the *mere possibility* of different performance does not support a conclusion that children *are, in fact,* more or less believable than adults. Reasonable jurors would *not* understand the instruction to suggest that a child whose *actual* performance on the stand connotes a lack of credibility must nevertheless be believed, notwithstanding the first sentence of the instruction.

11

> (People v. Clair, supra, 2 Cal.4th at p. 663; People v. Kelly, supra, 1 Cal.4th at pp. 525-526.)
>
> In sum, nothing in CALJIC No. 2.20.1 told the jurors to disregard indications of the child witness's impaired perception, understanding, memory or communication. It is not reasonably probable that the jury understood the instruction in the manner suggested by [petitioner]. (People v. Clair, supra, 2 Cal.4th at p. 663; People v. Kelly, supra, 1 Cal.4th at pp. 525-526.) There was no instructional error.

Answer, Lodged Doc. 2 at 8-11 (emphasis in original).

### 3) Applicable Law And Discussion

The Supreme Court, in Cupp v. Naughten, 414 U.S. 141 (1973), held that an instruction advising the jury that "[e]very witness is presumed to speak the truth," and promulgating the manners in which that presumption might be overcome, was not a violation of due process. Cupp, 414 U.S. at 142. Even if issuing such an instruction were an error, the state conviction could not be overturned absent a showing that the instruction at issue "violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Id. This Circuit has held that CALJIC 2.20.1 does not present such a violation. Brodit v. Cambra, 350 F.3d 985, 990-91 (9th Cir. 2003).

The decision by the state court was not contrary to a clearly established federal law, nor an unreasonable determination of the facts. Petitioner therefore is not entitled to relief on this claim.

## VI. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

1  shall be served and filed within ten days after service of the objections.  The parties are advised
2  that failure to file objections within the specified time may waive the right to appeal the District
3  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4  DATED: December 24, 2008

                                  CHARLENE H. SORRENTINO
                                  UNITED STATES MAGISTRATE JUDGE